R. C. LOVE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MYRA LOVE LERMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

F. S. LOVE ESTATE, THE UNION TRUST COMPANY OF PITTSBURGH, REBECCA LUDWICK LOVE AND GEORGE HUTCHINSON LOVE, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61768, 61770, 61771. Promulgated January 24, 1939.

*Floyd Toomey, Esq.,* and *W. A. Seifert, Esq.,* for the petitioners.
*Arthur Carnduff, Esq.,* for the respondent.

**OPINION.**

HILL: The questions presented in these proceedings are whether the amounts included in gross income by respondent represent (a) nontaxable liquidating distributions, or (b) liquidating distributions

taxable in whole as ordinary gains, or (c) distributions in liquidation having the effect *in toto* of taxable dividends, or (d) distributions having the effect in part of taxable dividends, and to that extent so taxable, and the remainder taxable as ordinary gain.

Petitioners contend that the cash distribution of June 14, 1927, was not received by them in the exchange of stock of the Bessemer Co. for stock in the Bessemer Corporation, but was a distribution in partial liquidation of the Bessemer Co., and since the amount distributed was less than the cost basis of the stock, no taxable gain was realized. Petitioners further contend that they did not derive any taxable gain on the liquidation of the Bessemer Co., since they exchanged stock in a corporation a party to a reorganization, in pursuance of the plan of reorganization, solely for stock in another corporation a party to the reorganization, and under section 203 (b)(2), Revenue Act of 1926,[2] neither gain nor loss in such circumstances is recognizable for tax purposes.

Respondent takes the position that the reorganization was a single transaction, carried out step by step, pursuant to the plan of reorganization, so that the four stockholders of the old company would get cash and stock in the new corporation, of a greater value than the cost basis of the old stock; or as may be otherwise stated, that the stockholders of the company received in full payment in exchange for their stock in the company, pursuant to the plan of reorganization, stock in the corporation and cash, having a combined value in excess of the cost basis of the company's stock, and hence, under subdivision (d) (1) of section 203, *supra*,[3] the gain realized is taxable to the extent of the cash so received. Respondent's contentions, we think, must be sustained.

There was a reorganization of the Bessemer Co. and the Bessemer Corporation under section 203 (h) (1) (B)[4] of the Revenue Act of 1926, for the reason that the Bessemer Co. transferred all of its assets, except cash, to the Bessemer Corporation and immediately after the transfer the Bessemer Co., or its stockholders, or both were in control of the Bessemer Corporation. Both the Bessemer

---

[2] SEC. 203 (b) (2). No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

[3] SEC. 203 (d) (1). If an exchange would be within the provisions of paragraph 1, 2, or 4 of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

[4] SEC. 203 (h). As used in this section and sections 201 and 204—

(1) The term "reorganization" means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred. * * *

178

Co. and the Bessemer Corporation were parties to the reorganization. It is axiomatic that when a corporation is reorganized it is a party to the reorganization. In the instant proceeding both the petitioners and respondent concede that there was a statutory reorganization involving as parties thereto both the Bessemer Co. and the Bessemer Corporation. We think there can be no question of the correctness of that concession, and therefore hold that there was a reorganization of the Bessemer Co. and the Bessemer Corporation, to which both were parties. Cf. *Groman* v. *Commissioner*, 302 U. S. 82; *Helvering* v. *Bashford*, 302 U. S. 454; *Claude Neon Lights, Inc.*, 35 B. T. A. 424, at pages 433, 435, and 437; *Fifth Avenue Bank of New York, Executor*, 31 B. T. A. 945, 949; affd., 84 Fed. (2d) 787. In the latter case we said at page 949:

We are further of the opinion that, in so far as it concerns Lederle and Laboratories, Inc., there was a statutory reorganization to which both were parties. Laboratories, Inc., acquired all the assets of Lederle, and the stock of Lederle was turned in and it liquidated and dissolved. This acquisition was for stock, a part of which went to Lederle's stockholders * * * Under circumstances very similar to those present here we held, in *First National Bank of Champlain, N. Y.*, 21 B. T. A. 415, that the term "party to the reorganization" includes the corporation which was reorganized and whose securities were surrendered as well as the corporation resulting from the reorganization. We said in part (p. 423):

* * * Any other interpretation would stultify the statute.

The plan of reorganization embraced (1) the incorporation of the Bessemer Corporation to take over or purchase and acquire all the assets, franchises, and property of the Bessemer Co. except cash, and of the Harmar Co. and Indianola Co.; (2) the merger of the Bessemer Co. in the Bessemer Corporation by a transfer of its franchise and all of its assets other than cash to the latter in exchange for all of the latter's capital stock; the distribution of such capital stock and of cash to Bessemer Co. stockholders in exchange for their stock in the company; and the dissolution of the Bessemer Co.; and (3) the liquidation of the Bessemer Co. by a series of two distributions to its stockholders in complete cancellation or redemption of its outstanding capital stock as follows: (a) Cash in the amount of $1,150,157.95, and (b) capital stock of the Bessemer Corporation. The reorganization was effected in accordance with this plan.

It is contended by petitioners that the cash distribution was in partial liquidation of the Bessemer Co. and was a part of the plan of liquidation of that company, but that it was not a part of the plan of reorganization. We agree with the first part of petitioners' contention, but do not agree that the cash distribution was not a part of the plan of reorganization.

The first step in the plan of reorganization was taken on April 7, 1927, when the Bessemer Corporation was organized for the purpose of taking over all the assets, franchises, and property of the Bessemer Co. and the two subsidiary corporations. The reorganization, according to the plan thereof, was completed on July 21, 1927, upon the issuance on that date of 21,758 shares of the common capital stock of the Bessemer Corporation direct to the stockholders of the Bessemer Co. in proportion to their respective shares of the stock of that company. The intermediate steps were as set out in our findings of fact. The plan of reorganization contemplated and required the complete liquidation and dissolution of the Bessemer Co. Neither of the two distributions in liquidation, standing alone, constituted a distribution either in partial or complete liquidation, since neither of them in itself was in complete cancellation or redemption of either a part or all of the capital stock. Sec. 201 (c) and (h), Revenue Act of 1926.[5] The cash distribution was a distribution in partial liquidation because it was one of a series of two distributions in complete cancellation or redemption of the stock of the Bessemer Co., the other of such distributions being the distribution of the stock of the Bessemer Corporation. The two distributions were inseparably connected as interdependent steps in effecting such liquidation, and the liquidation could only be completed through the execution of the plan of reorganization. Likewise, the execution of the plan of reorganization required the complete liquidation of the Bessemer Co. Hence, the cash distribution, being one of a series of interdependent steps in the liquidation, was a part of the plan of reorganization.

Under the plan of reorganization the stock of the Bessemer Corporation and cash in the amount of $1,150,157.95 were to be distributed to Bessemer Co. stockholders in full liquidation of their stock holdings in the latter company, and the board of directors of the Bessemer Co. directed that notice be given to the stockholders to surrender their stock in that company. The record is silent as to what, if anything, was done pursuant to that direction. It may reasonably be assumed that the direction of the board of directors was carried out and the stock surrendered, since such action was inherent

---

[5] SEC. 201. (c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *

*      *      *      *      *      *      *

(h) As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

in the plan of reorganization. But whether or not the certificates evidencing such stock were actually surrendered, the stock became nonexistent as an asset or thing of value upon the liquidation and dissolution of the Bessemer Co. and in lieu thereof the petitioners had their proportionate shares of the liquidating distributions of cash and stock. The petitioners as stockholders gave formal approval to the transactions under the plan of reorganization, which rendered their Bessemer Co. stock valueless, and thereby surrendered it in exchange for the liquidating distributions. Moreover, under section 201 (c) and (h), *supra*, the liquidation operated as full payment in exchange for the Bessemer Co. stock and as a complete cancellation or redemption thereof.

We hold, therefore, that petitioners, in pursuance of the plan of reorganization, exchanged and surrendered their stock in the Bessemer Co., a party to the reorganization, for cash and stock in the Bessemer Corporation, a party to the reorganization.

Such exchange would be within the provisions of section 203 (b) (2) of the Revenue Act of 1926,[6] but for the fact that the exchange was for stock and cash and not solely for stock. The exchange, therefore, falls within the provisions of section 203 (d) (1).[7]

Respondent has determined that the entire amount of the cash distribution of June 14, 1927, had the effect of the distribution of a taxable dividend, and on brief asserts that such dividend, to the extent of the accumulated earnings or 57.2113 percent of the total cash distributed, consisted of profits accumulated since February 28, 1913, and to the extent of the balance of the cash distribution represented gain from the exchange of stock. We do not agree with the determination by respondent that the entire cash distribution is taxable as a dividend. We do agree that such distribution, under the plan of reorganization, had the effect of a distribution of a taxable dividend to the extent of the accumulated earnings of the company at the time the distribution was made and should be taxed as such. But we do not agree that that part of the cash distribution in excess of such earnings was a taxable dividend or had the effect of a taxable dividend. It might properly have been taxed as a gain from the exchange of property at ordinary tax rates, since the petitioners did not elect to have such gain taxed at the capital gains rate. However, respondent in determining the deficiencies computed a surtax only on the entire cash distributions and has not asked for increased deficiencies.

Respondent further contends that the cash distribution was not a liquidating dividend, and argues that by such distribution there was no partial liquidation of the Bessemer Co. This view, we think,

<hr />

[6] See footnote 2, *supra.*
[7] See footnote 3, *supra.*

is erroneous. In support of his contention, respondent cites, among other similar decisions, *Edison Securities Corporation*, 29 B. T. A. 483; affd., 78 Fed. (2d) 85. The cited case is distinguishable on the facts. There the distributions made were not in excess of the accumulated earnings, and at that time no dissolution or winding up had been decided upon or definitely planned, although a later determination to liquidate and dissolve was carried out. In the instant case, the liquidation of the Bessemer Co. had been definitely planned prior to the cash distribution on June 14, 1927; the distribution made was far in excess of the accumulated earnings available for distribution as ordinary dividends; the resolution of the directors declared it was in partial liquidation of the company, and shortly thereafter a distribution in final liquidation was made and the company was dissolved.

The fact that a distribution is called a "dividend" and is made in part from earnings and profits and before liquidation or dissolution proceedings are commenced, is not controlling. *Hellmich* v. *Hellman*, 276 U. S. 233; *Canal-Commercial Trust & Savings Bank* v. *Commissioner*, 63 Fed. (2d) 619, 620; *Gossett* v. *Commissioner*, 59 Fed. (2d) 365, 367; *Tootle* v. *Commissioner*, 58 Fed. (2d) 576, 580. "The determining element is whether the distributions were made in the ordinary course of business and with intent to maintain the corporation as a going concern, or after deciding to quit and with intent to liquidate the business." *Holmby Corporation* v. *Commissioner*, 83 Fed. (2d) 548, 549; affirming 28 B. T. A. 1092. See also *Rollestone Corporation*, 38 B. T. A. 1093.

In support of their contention that they realized no taxable income from the reorganization here involved, petitioners cite and rely upon our decision in *Georgia Savings Bank & Trust Co., Executor*, 28 B. T. A. 1153. That case is distinguishable on the facts from the present proceedings, and in our opinion is not controlling here. There A corporation sold its real estate and part of its personal property for $200,000 cash and declared and paid a dividend out of surplus in that amount. The stockholders of A then exchanged their stock in that corporation for stock only in B corporation, pursuant to the plan of reorganization. We held there were two separate transactions, and that the gain derived from the exchange of stock for stock was not recognizable for tax purposes. It is to be noted that there was no liquidation of A corporation, and the cash distribution was taxed to the stockholders of A as an ordinary dividend. The cited case affords no support for petitioners' contention that they should not be taxed upon the cash distribution in question either as an ordinary dividend or as gain derived from an exchange of property.

It is our opinion, and we so hold on the facts disclosed in tne instant case, that petitioners received as liquidating dividends in full payment in exchange for their stock in the Bessemer Co., pursuant to the plan of reorganization, (1) their proportionate parts of the cash distribution of June 14, 1927, and (2) stock in the Bessemer Corporation distributed to them on July 21, 1927.

The gain derived has been determined by respondent to be in excess of the cash distributed, and such determination is not questioned by petitioners. The gain is, therefore, taxable under section 203 (d) (1), *supra*, to the extent of the cash received. Since the cash distribution was made in pursuance of the plan of reorganization and included undistributed earnings and profits accumulated after February 28, 1913, to the extent of such accumulated earnings and profits it clearly had the effect of the distribution of a taxable dividend.[8] *George Woodward*, 23 B. T. A. 1259; *John S. Woodward*, 30 B. T. A. 1216, dismissed on appeal. It follows that the cash distribution is taxable as dividends to the distributees in the amounts of their ratable shares of the accumulated earnings, and the remainder of the cash distribution is taxable as gain from the exchange of property.[9]

The deficiencies determined by respondent are approved.

*Decisions will be entered for the respondent.*

---

[8] SEC. 201. (a) The term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings accumulated after February 28, 1913.

[9] SEC. 203 (d) (2). If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as gain from the exchange of property. [See paragraph (1) under footnote 3, *supra.*]