ROBERT M. MORGAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87739.   Promulgated February 14, 1940.

*Allen S. Hubbard*, Esq., and *William W. Owens*, Esq., for the petitioner.

*John B. Wheeler*, Esq., for the respondent.

---

OPINION.

MELLOTT: Petitioner contends that he did not realize any taxable income by reason of the series of steps set out in our findings and that the respondent erred in determining the deficiency in tax. Respondent justifies his determination upon the theory that the various steps were but a cloak to obscure the real transaction; that the substance, rather than the form, of the transaction should be considered; and that the result, for tax purposes, is the same as if petitioner had traded his interest in Albert C. Field, Inc., directly to that corporation for the interest which it held in Robert M. Morgan, Inc.

The applicable sections of the Revenue Act of 1932 are set out in the margin.[1]

Summarizing our findings, it will be noted that the following steps were taken:

(1) Petitioner transferred his 7,500 shares of Albert C. Field, Inc., stock to Monterey in exchange for all of its capital stock.

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation ; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

\* \* \* \* \* \* \*

(i) DEFINITION OF REORGANIZATION.—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one cor-

(2) Simultaneously Albert C. Field, Inc., transferred one-fourth of its assets to Morgan (1932) in exchange for all of its capital stock.

(3) Morgan (1932) and Monterey consolidated under the laws of Delaware into a new corporation, Morgan (1933) and petitioner and Albert C. Field, Inc., each received one-half of its capital stock, which consisted of 2,000 shares, or 1,000 shares.

(4) Morgan (1933) surrendered the 7,500 shares of Albert C. Field, Inc., which it had acquired as shown in steps one and three, to the issuing corporation and received the 1,000 shares of its stock (see steps 2 and 3), whereupon each corporation canceled the shares of its own stock thus acquired.

Upon brief petitioner points out that each step, examined separately, comes within some subdivision of the applicable revenue act under which gain or loss is not to be recognized. Thus, he says: In step number 1 he made a nontaxable exchange under section 112 (b) (5), *supra;* in step number 2 there was a nontaxable exchange of property by a corporation, a party to a reorganization, in pursuance of a plan of reorganization, solely for stock in another corporation, a party to a reorganization (section 112 (b) (4) and (i) (1) (B), *supra*); in step number 3 there was a statutory consolidation and hence a reorganization of two corporations (section 112 (i) (1) (A), *supra*), and he, in pursuance of the plan, exchanged stock in a corporation, a party to a reorganization, for stock or securities in another corporation, a party to the reorganization (section 112 (b) (3), *supra*); and in step 4, one corporation,.Morgan (1933) acquired, by purchase—i. e. by giving up a portion of its assets consisting of stock in Albert C. Field, Inc.—1,000 shares of its own stock, which did not result in any taxable gain to it. (Art. 66, Regulations 77. Cf. *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110.) Petitioner contends, in the alternative, that if any taxable gain were realized—which he denies—it was realized by the consolidated corporation (Morgan, Inc. (1933)) through a distribution in partial liquidation of Albert C. Field, Inc., but that no part of such gain may be im-

---

poration of at least a. majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

  *     *     *     *     *     *     *

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

  *     *     *     *     *     *     *

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of section 112 (h) of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

puted to him. He also asks us to find as a fact that the cost of the securities transferred to Robert M. Morgan, Inc. (1932) by Albert C. Field, Inc., was $515,663.10, while their fair market value on December 29, 1932, was $129,838.77. The evidence indicates that the fact is as urged; but we have refrained from making any such finding because it is not relevant to the issue before us.

Respondent argues that petitioner, in taking the various steps, was merely endeavoring "to avoid by form a tax which is legally due when substance is considered" (*United States* v. *Phellis*, 257 U. S. 156; *Kent Oil Co.*, 38 B. T. A. 528); that the "interdependent steps in the integral plan, for income tax purposes, must be treated as a single transaction" (*United Light & Power Co.*, 38 B. T. A. 477; affd., 105 Fed. (2d) 866; certiorari denied, 308 U. S. 574; that the rule enunciated by the Supreme Court in *Gregory* v. *Helvering*, 293 U. S. 465, should be applied since the purpose was "not to reorganize a business * * * but to transfer a parcel of" assets to petitioner—a "mere device which put on the form of a corporate reorganization as a disguise for concealing its real character"; and that the whole plan, though a bit more elaborate, can not be distinguished from the one involved in *Paul L. Case*, 37 B. T. A. 365 (affirmed upon the reorganization issue in *Case* v. *Commissioner*, 103 Fed. (2d) 283).

The right answer to the question is somewhat elusive. Much of petitioner's argument is persuasive and it can not be gainsaid that many of the steps, standing alone, come within the literal wording of the sections relied upon; but we are of the opinion that respondent must be sustained.

The object which petitioner and Albert C. Field, Inc., sought to accomplish by the above steps was obviously the avoidance of tax upon petitioner. Counsel for petitioner tacitly admits as much in his opening statement. Before the steps were taken petitioner owned a minority interest in the stock of Albert C. Field, Inc. He wanted to have approximately one-fourth of the assets of that corporation and especially those which were being used in the grain business conducted by it, transferred to a corporation all of the stock of which was to be owned and controlled by him. If the assets had been transferred to petitioner in exchange for the 7,500 shares of Albert C. Field, Inc., stock owned by him, he would have realized taxable gain measured by the difference between the cost or other basis of the 7,500 shares and the value of the assets; and this would have been true even though he subsequently or contemporaneously transferred them to another corporation in exchange for its stock. Faced with this situation, the interested parties turned to the exchange and reorganization provisions of the statute and devised the series of steps enumerated above.

Petitioner now urges, in effect, that by the use of the roundabout method which was followed he succeeded in getting one-fourth of the assets of Albert C. Field, Inc., into the hands of Morgan (1933), all of the stock of which is owned by him, without the realization of any taxable gain. We are not convinced that he has done so. The Supreme Court of the United States said in *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609, 613: "A given result at the end of a straight path is not made a different result because reached by following a devious path." Cf. *Griffiths* v. *Helvering*, 308 U. S. 355. This is especially true in tax cases because of the well settled principle that in applying the income tax laws the substance, and not the form, of the transaction controls. *United States* v. *Phellis*, *supra*.

Petitioner would have us treat each of the steps taken by him and Albert C. Field, Inc., and the corporations they created to serve as conduits, as separate and distinct transactions. If we should do this, and it could be said that each of the steps was executed for the purpose of effecting a statutory reorganization, our decision would necessarily be in favor of petitioner. But, as has often been said by the courts and this Board: "For income tax purposes the component steps of a single transaction can not be treated separately." *Bassick* v. *Commissioner*, 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592, affirming 30 B. T. A. 163; *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309; *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77, affirming on this point, 25 B. T. A. 1254; *Ahles Realty Corporation* v. *Commissioner*, 71 Fed. (2d) 150; certiorari denied, 293 U. S. 611; *Hazeltine Corporation* v. *Commissioner*, 89 Fed. (2d) 513, affirming 32 B. T. A. 110, on this point; *Schumacher Wall Board Corporation*, 33 B. T. A. 1211; affd., 93 Fed. (2d) 79; *Helvering* v. *Bashford*, 302 U. S. 454; *George Whittell & Co.*, 34 B. T. A. 1070; *Starr* v. *Commissioner*, 82 Fed. (2d) 964; certiorari denied, 298 U. S. 680; *Paul L. Case*, *supra*.

In the instant proceeding there was but a single plan and a single transaction. The plan, stripped of all camouflage, was to have petitioner's proportionate interest in the assets of Albert C. Field, Inc., transferred to a new corporation, Morgan (1933), all of the stock of which was to be owned by petitioner. When the plan was consummated this was the net result. Petitioner owned all of the stock of Morgan (1933) and had surrendered the 7,500 shares of the stock of Albert C. Field, Inc., formerly owned by him. The substance of the transaction, therefore, was merely an exchange by petitioner of the stock of one corporation for stock of another. Unless such an exchange was made pursuant to a plan of reorganization, it is taxable.

If petitioner had taken a straight path in the instant proceeding, no statutory reorganization would have been effected, and we think

it must be held that none was effected by following the devious path selected. This is so because from the inception of the transaction to its conclusion there was never any intention to reorganize a corporate business. It may be true, as petitioner argues, that the steps taken had a business purpose; but many exchanges of stock for stock have business purposes and yet are not made in connection with, or pursuant to, a reorganization within the intendment of the statute. Nor is it material to the present issue that petitioner was motivated by a business purpose when he arranged for the transfer of his proportionate interest in the assets of Albert C. Field, Inc., to a corporation all of the stock of which was to be owned by him. There was no reorganization within the intendment of the statute because when the transaction was consummated neither Albert C. Field, Inc., nor its stockholders retained any interest in Morgan (1933). The continuity of interest on the part of the reorganized corporation or its stockholders which is essential to any statutory reorganization was lacking. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599; *Electrical Securities Corporation* v. *Commissioner*, 92 Fed. (2d) 593; *United Light & Power Co., supra.* Indeed it might be said, as was said in *Paul L. Case, supra*, that the very purpose of the plan was to destroy the continuity of interest. True, the facts in the instant proceeding are not identical with those in the cited case; but they are sufficiently alike to justify the application of the same principle. We held that there was no reorganization in *Paul L. Case* even though the larger corporation, Peckham Case Co., corresponding to Albert C. Field, Inc., in the instant proceeding, exchanged a portion of its assets for the stock of the newly organized corporation. We predicated our decision upon the fact that its holding of such stock was "transitory and without real substance; [being] part of a plan which contemplated the immediate transfer of the stock" to another. The same conclusion is justified under the evidence in the instant proceeding. It was never intended that Albert C. Field, Inc., should hold the stock of the new corporation, except temporarily. The purpose of the organization of Morgan, Inc., was to segregate the assets of Albert C. Field, Inc., and to vest them either in petitioner or in a corporation whose stock he owned. He did not feel that the assets of his brother-in-law's estate should be "invested in that [grain export] business because it was too risky." He desired to cooperate with those interested in the estate toward making Albert C. Field, Inc., become, as it did become, "dormant as a holding company" for the benefit of Field's heirs. It is our conclusion therefore that the exchange here involved was not made pursuant to a plan of reorganization, and that the gain

realized by petitioner was taxable to the extent determined by the respondent.

In passing it might be stated that under the recent decision of the Supreme Court of the United States in *Higgins* v. *Smith*, 308 U. S. 473, we would probably be justified in finding that the substance of the transaction here under consideration was merely a transfer of one-fourth of the assets of Albert C. Field, Inc., to petitioner, he being the owner of all of the stock of Morgan (1933), in exchange for the 7,500 shares of stock of Albert C. Field, Inc. Inasmuch, however, as such a construction necessitates a disregard of the corporate entity of Morgan (1933), we prefer to rest our decision on the ground that the substance of the transaction was an exchange of 7,500 shares of stock of Albert C. Field, Inc., for all of the stock of Morgan (1933).

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

LEECH, concurring: I agree that the several steps, in carrying out the obvious plan, constituted only one transaction for tax purposes. Neither Albert C. Field, Inc., nor its stockholders, retained the necessary continuing interest in Morgan (1933), in which the assets originally owned by Field, Inc., rested at the consummation of that transaction. For that reason, therefore, I concur in the holding that there was no statutory reorganization. *LeTulle* v. *Scofield*, 308 U. S. 415; *Paul L. Case*, 37 B. T. A. 365 (affirmed upon the reorganization issue in *Paul L. Case* v. *Commissioner*, 103 Fed. (2d) 283).